**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MARY P. BENTON,                          :

    Plaintiff,                       :

vs.                                      :        CA 06-0450-KD-C

MICHAEL J. ASTRUE,                       :
Commissioner of Social Security,
                                         :
    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the oral arguments of the parties on March 28, 2007, it is determined that the Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.

Plaintiff alleges disability due to status-post subarachnoid hemorrhage

craniotomy with aneurysm clipping, lumbar spinal stenosis with lumbar radiculopathy, hypertension, arthritis, and aortic valve replacement surgery.

The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant's period of adjudication has extended from January 26, 2002, the claimant's amended alleged onset date, through [] December [31], 2003, the date last insured. For the period of adjudication, an unfavorable decision is being issued at Step 4 of the sequential evaluation process.
>
> 2. The claimant did not engage in substantial gainful activity for Step 1 decisional purposes during the period of adjudication.
>
> 3. The claimant had the following "severe" medically-determinable impairments during the period of adjudication: status post subarachnoid hemorrhage and craniotomy with aneurysm clipping; lumbar spinal stenosis with lumbar radiculopathy; and mild degenerative arthritis of the left knee.
>
> 4. The claimant alleged musculoskeletal problems associated with her hands, shoulders and hips, as well as headaches, and the Administrative Law Judge considered hypertension and a goiter as possible "severe" conditions, but the same were not established as entailing significant work-related limitations of record resulting from medically-determinable impairments for a continuous period of 12 months during the period of adjudication.
>
> 5. No single medically-determinable impairment, or combination thereof, has had the specific or equivalent severity of medical findings necessary to establish presumptive disability under the evaluative standards found in Appendix 1 of the Regulations during the period of adjudication.
>
> 6. The claimant's testimony of subjective complaints and

functional limitations, where inconsistent with the residual functional capacity of this decision, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility.

7.   During the period of adjudication, the claimant retained the residual functional capacity for work at the light exertional level, in function-by-function terms as set forth in Social Security Ruling 83-10, with the ability [to] sit, stand and walk for a total of 6 hours during an 8-hour workday; lift and carry up to 10 pounds continuously and 20 pounds occasionally; use upper and lower extremities for pushing and pulling of controls; perform simple grasping and fine manipulation; occasionally bend, squat and crawl; frequently climb and reach. This work capacity was not prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the period of adjudication. In this regard, the undersigned afforded controlling weight to the opinion of a treating neurologist in determining the claimant's residual functional capacity.

8.   The claimant remained capable of performing her past relevant work as a "booking supervisor" as generally performed in the national economy during any consecutive 12-month period of time at issue. This finding was supported by impartial vocational expert testimony.

9.   The claimant was <u>not</u> under a "disability," as defined in the Social Security Act, at any time on or before her date last insured, December 31, 2003.

(Tr. 318-319 (emphasis in original)) The Appeals Council affirmed the ALJ's decision (*see* Tr. 292-294) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id*. at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a bookkeeping supervisor, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the plaintiff contends that the ALJ committed the following errors: (1) he erred in finding her arthritis in her hands to be a non-severe impairment; and (2) he arbitrarily substituted his own medical opinion for that of a medical professional by finding her aortic valve replacement surgery in April of 2004 was too distant to alter her residual functional capacity ("RFC") for January 26, 2002 through December 31, 2003. The Court considers plaintiff's allegations of error in turn.

    A.    **<u>Plaintiff's Arthritis in her Hands.</u>**  The ALJ specifically found plaintiff's "musculoskeletal problems with her hands" to be a non-severe impairment during the relevant time period, that is, from January 26, 2002 through December 31, 2003. (Tr. 318, Finding No. 4) It is plaintiff's contention that the ALJ erred in finding this impairments non-severe in light of the low threshold showing necessary in this Circuit to establish a severe impairment, *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."), and the evidence of record which establishes a diagnosis of degenerative arthritis of the fingers of the right hand

back on June 24, 1998 (Tr. 525), a diagnosis of Herbeden's nodes[1] on March 3, 2000 (Tr. 524), and a June 20, 2002 opinion from her primary care physician, Dr. Steve Donald, that she has significant orthopedic abnormalities in regard to the arthritis in her back and hands (Tr. 574; *see* Tr. 503 & 507 (July 30, 2002 PCE completed by a social security disability examiner[2] that plaintiff would be limited to frequent handling and fingering secondary to pain caused by Heberden's nodes)).

With respect to the foregoing evidence, only Dr. Donald's clinical observation of June 20, 2002 comes from the relevant time period. (*See* Tr. 318, Finding No. 1 ("The claimant's period of adjudication has extended from January 26, 2002, the claimant's amended alleged onset date, through [] December [31], 2003, the date last insured.")) Accordingly, the ALJ's analysis of the severity issue with regard to plaintiff's hands is relegated to but a few sentences, as follows: "The claimant also alleged other impairments as 'severe'

---

[1]  "Heberden's nodes are 'exostoses about the size of a pea or smaller, found on the terminal phalanges of the fingers in osteoarthritis, which are enlargements of the tubercles at the articular extremities of the distal phalanges.'" *Spicer v. Barnhart*, 64 Fed.Appx. 173, 175 (10th Cir. 2003) (unpublished decision), quoting Stedman's Medical Dictionary 1057 (25th ed. 1990); *see also Bowman v. Astrue*, 2007 WL 951680, *9 n.8 (W.D. Va. 2007) ("Heberden's nodes are bony prominences that occur at the smallest joint at the end of the fingers. They develop as a result of inflammation that occurs in the bone under adjacent cartilage that has wear from osteoarthritis.").

[2]  Ronnie C. Kilgore completed the PCE (Tr. 507); the evidence of record establishes that Kilgore is a disability examiner (Tr. 320).

6

impairments during the period of adjudication including musculoskeletal problems associated with her hands, shoulders and hips as well as headaches; however, such impairments are determined by the undersigned to have been non-severe in nature or to have not constituted medically-determinable impairments during the pertinent period for review []. In June 2002, Dr. Donald diagnosed the claimant with 'some arthritis' in the hands. He indicated, however, that physically the claimant was 'normal' []." (Tr. 312) Indeed, Dr. Donald did indicate on June 20, 2002 that plaintiff was physically normal and that the arthritis in her hands was "getting a little better." (Tr. 574) Given these observations, as well as the fact that no examining physician has ever indicated that plaintiff's ability to perform the physical requirements of work would be impacted by the arthritis in her hands,[3] the ALJ's determination that plaintiff's arthritis in her hands was a non-severe impairment during the relevant time period is supported by substantial evidence.

---

[3]  The only examining physician to have completed a physical capacities evaluation ("PCE") during the relevant time period, plaintiff's treating neurologist Dr. Todd Elmore, indicated, on January 7, 2003, that Benton can frequently reach and can use her hands for repetitive actions such as simple grasping, pushing/pulling of arm controls, and fine manipulation. (Tr. 559) The ALJ properly accorded Elmore's PCE substantial weight, while giving the PCE completed by a disability specialist no weight, in determining that plaintiff's arthritis in her hands was not a severe impairment during the relevant time period. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.").

**B.     The ALJ Substituted his Medical Opinion for that of a Medical Professional by finding Plaintiff's Aortic Valve Replacement Surgery in April 2004 too Distant to Alter her RFC for January 26, 2002 through December 31, 2003.**  It is plaintiff's contention that the ALJ improperly evaluated the evidence relating to her aortic valve replacement in April 2004 and improperly concluded that this evidence was too distant in time to alter her residual functional capacity for January 26, 2002 through December 31, 2003. (*See* Doc. 8) The undersigned agrees with plaintiff's argument in this regard.

The ALJ evaluated the evidence submitted by plaintiff regarding her aortic valve replacement on April 15, 2004 in the following manner:

> Admittedly, the claimant presented to Dr. Mass, in March 2001, with concerns about possible carotid stenosis. However, Dr. Mass reported that cardiopulmonary and abdominal examinations were normal. A Duplex scan identified no significant carotid stenosis and a mild external carotid stenosis. Dr. Mass' diagnostic impression included no significant cerebrovascular stenosis (Exhibit B-23F). Thus, the above salient facts exist to show that the claimant's condition in April 2004 cannot be reasonably related back in time to the period of January 26, 2002 (the alleged disability onset date) through December 31, 2003 (the date last insured) to establish that the claimant experienced disability as of or before her date last insured due to a new cardiovascular impairment. The Administrative Law Judge further notes, for example, that the medical record did not document that the claimant actually presented with cardiac symptomatology to a physician before

8

> December 31, 2003 or even before the April 2004 procedure. Moreover, no treating cardiologist rendered an opinion of diminished work capacity of likely 12 months duration associated with or before the procedure. Therefore, the medical evidence with regard to April 2004, would not have reasonably altered the claimant's residual functional capacity for the period at issue in this case, i.e., January 26, 2002 through December 31, 2003.

(Tr. 316-317) While the undersigned agrees with the ALJ's recitation of the salient facts regarding plaintiff's examination by Dr. Mass in March of 2001, the ALJ ignores evidence from the relevant time period which documents that Benton actually presented to a physician with cardiac symptomatology prior to December 31, 2003. On April 1, 2002, plaintiff reported to her primary care physician, Dr. Steve Donald, that she was experiencing chronic right-sided chest pain. (Tr. 483 ("It has already been ultrasound three time[s].")) A CT scan of the thorax with contrast revealed, in addition to a normal-sized heart, the following: "THERE APPEARS TO BE SOME **CALCIFICATION IN THE AREA OF THE AORTIC VALVE ASSOCIATED WITH MILD ECTASIA OF THE ASCENDING SEGMENT OF THE THORACIC AORTA AND AORTA STENOSIS COULD BE PRESENT**. THIS COULD BE CORRELATED WITH CARDIOGRAPHY. SMALL AMOUNT OF CALCIFICATION IN THE WALL OF THE AORTIC ARCH. THE DESCENDING THORACIC AORTA IS NORMAL IN CALIBER. THE

9

PROXIMAL PULMONARY ARTERIES ARE UNREMARKABLE." (Tr. 485 (emphasis supplied))[4] In light of these roentgenological findings regarding Benton's aorta, specifically calcification in the area of the aortic valve and possible aortic stenosis, the Magistrate Judge can reach no other determination but that the ALJ, had he considered this evidence, would have found that plaintiff's aortic valve replacement in April of 2004 reasonably can be related back to the relevant time period of January 26, 2002 through December 31, 2003.[5] The ALJ's failure to consider this patently relevant evidence places this Court in the position of being unable to find substantial evidentiary support for his determination that "the medical evidence with regard to April 2004[] would not have reasonably altered the claimant's residual functional capacity for the period at issue in this case, i.e., January 26, 2002 through December 31, 2003." (Tr. 317) Accordingly, this case is due to be remanded to the Commissioner of Social Security for further consideration of the relation-back issue involving plaintiff's April 15, 2004 aortic valve replacement and the impact of plaintiff's

---

[4] This scan also revealed a goiter and based on this abnormal finding plaintiff's primary care physician, Dr. Donald, focused on this abnormality as the source of Benton's pain rather than the abnormal cardiac findings. (*See* Tr. 482 ("Ms. Benton presents to go over CT results. She has a intrathoracic goiter. She also needs refills on her medications. We are going to set her up with Dr. Reese. She has a normal TSH and abnormal CT findings."))

[5] The calcification of plaintiff's aortic valve found in April of 2002 obviously did not get better in the intervening two years before her surgery.

cardiac impairment on her ability to perform work activity during the relevant time period.

## CONCLUSION

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying claimant benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

The attached sheet contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** and **ORDERED** this the 18th day of April, 2007.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

**l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:**

> **A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.**

**A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.**

**2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.**

                                                            **s/WILLIAM E. CASSADY                 
                                                            UNITED STATES MAGISTRATE JUDGE**